IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 9, 2015 Session

**ANDREW T. LEE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-71612     Keith Siskin, Judge**

_____

**No. M2014-02242-CCA-R3-PC – Filed January 19, 2016**

_____

In 2012, a Rutherford County jury found the Petitioner, Andrew T. Lee, guilty of especially aggravated burglary, aggravated assault, tampering with evidence, evading arrest, and resisting arrest. The trial court sentenced the Petitioner to a total effective sentence of ten years in the Tennessee Department of Correction. The Petitioner filed a petition seeking post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner maintains that he received the ineffective assistance of counsel and that he was denied his right to a speedy trial due to the delay between his conviction and sentencing. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

Peter M. Zettersten, Brentwood, Tennessee, for the appellant, Andrew T. Lee.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Nathan S. Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Rutherford County grand jury indicted the Petitioner for especially aggravated burglary, aggravated assault, tampering with evidence, evading arrest, resisting arrest, and employing a firearm during the commission of a dangerous felony. These charges

alleged that the Petitioner entered the home of the victim, a woman with whom he had shared a romantic relationship, and attacked the victim, and another man, who was the victim's new romantic interest. On September 27, 2012, a jury convicted the Petitioner on all charges except employing a firearm during the commission of a dangerous felony. In the months following the trial, the Petitioner's trial attorney became ill and ultimately died. The sentencing hearing was delayed and, ultimately, a new attorney was appointed to represent the Petitioner during sentencing. The trial court held a sentencing hearing on April 18, 2013, and sentenced the Petitioner to serve sentences of ten years for the aggravated burglary conviction, ten years for the aggravated assault conviction, ten years for the tampering with evidence conviction, eleven months and twenty-nine days for the evading arrest conviction, and six months for the resisting arrest conviction, with all of the sentences to be served concurrently, for an effective sentence of ten years in the Tennessee Department of Correction.

Following the sentencing hearing, on April 30, 2013, the Petitioner signed a waiver of his right to seek a new trial or an appeal. On April 14, 2014, the Petitioner filed a petition for post-conviction relief, asserting that he had received the ineffective assistance of counsel and that he was denied the right to a speedy trial due to the six-month delay between his conviction and sentencing. On September 11, 2014, the post-conviction court held a hearing on the petition where the parties presented the following evidence: The Petitioner testified that he hired his trial attorney ("trial counsel"). The jury convicted him on September 27, 2012, and he was sentenced on April 18, 2013. The Petitioner stated that he was unable to make bail during the six-month interval between the trial and his sentencing hearing. The Petitioner believed at the time that he would be sentenced within thirty days of his conviction date pursuant to the Tennessee Rules of "Appellate" Procedure.

The Petitioner testified that, in January 2013, he wrote the trial court requesting a suspended sentence and enclosed a letter from his "Nashville attorney" notifying him that trial counsel was deceased. The Petitioner explained that the Nashville attorney represented him on a case in Davidson County. The Petitioner was waiting to be sentenced in Rutherford County before being sentenced in Davidson County. At some point, the Petitioner asked the Nashville attorney to check on the status of his sentencing in Rutherford County, and the Nashville attorney learned that trial counsel had died on January 18, 2013. The Petitioner recalled that he wrote the letter to the trial court the week after he learned of trial counsel's death, "around January the 24th."

The Petitioner testified that the trial court appointed a new attorney ("sentencing counsel") in February, and she met with the Petitioner on February 14, 2013, for "about 10 minutes, if that." According to the Petitioner, sentencing counsel again met with the Petitioner to review the presentence report. The Petitioner stated that sentencing counsel

2

never reviewed or discussed the trial with him nor did she ever request the trial transcripts. The Petitioner agreed that the delay in his sentencing was due to his trial counsel's death but stated that the trial court never provided him with a reason for the delay between the trial and the sentencing hearing.

The Petitioner testified that, at trial, trial counsel "did a pretty good job, but "could have did better." The Petitioner explained that he should not have been charged with aggravated assault since the State never recovered the gun allegedly used in the offenses. The Petitioner said that trial counsel also failed to call the Petitioner's daughter to testify. As to sentencing counsel's representation, the Petitioner said that the two "got off on the wrong foot" and that sentencing counsel wanted to "tell [him] what the court system wanted to do for me instead of help me." The Petitioner said he had not felt confident in sentencing counsel's expertise or preparation for his sentencing hearing.

The Petitioner identified a letter he received from sentencing counsel identifying an error in the "Sentencing findings of fact." The document reflected a sentence of twenty years when the Petitioner was sentenced to only ten years. The Petitioner acknowledged that sentencing counsel found this error and corrected it but noted that she failed to address an error related to enhancement factors. The enhancement factors listed were redundant and inaccurate. The form twice listed enhancement factor (8), that the defendant before trial or sentencing failed to comply with the conditions of sentencing involving release into the community. *See* T.C.A. § 40-35-114(8). The Petitioner further noted that, in addition to the redundancy, the factor was inapplicable because he was never released into the community.

The Petitioner testified that he "wish[ed]" he could have raised this sentencing error on appeal; however, when he sought to file a motion for new trial, he was informed that he had waived his right to a new trial and his right to an appeal. The Petitioner acknowledged that it was his signature on the April 30, 2013 waiver form. He explained that sentencing counsel spent "about five minutes" reviewing the waiver with him and that she only discussed parole with him rather than waiver. The Petitioner said he did not read or understand the waiver because sentencing counsel told him to sign it since he "couldn't make parole." He said he believed that the waiver he signed was documenting that he would be paroled in eighteen months. He denied knowing that he was waiving his right to a new trial or an appeal. The Petitioner noted that there were three incorrect dates in the waiver, indicating to him that sentencing counsel did not thoroughly review the document with the Petitioner at the time he signed it.

The Petitioner testified that he and trial counsel talked extensively about appeal options and that he told the trial court during the sentencing hearing that he wanted to file

3

an appeal. Thus, he was surprised when he received the copy of the waiver in response to his motion for a new trial.

On cross-examination, the Petitioner agreed that sentencing counsel did not force him to sign the waiver of appeal. He stated that he did not read the document, he just signed it. As to trial counsel's deficiencies, the Petitioner stated that trial counsel failed to have one of his witnesses, the Petitioner's daughter, leave the courtroom and, therefore, she could not be called to testify. When asked what his daughter would have said, the Petitioner stated, "I have no idea." The Petitioner stated that his daughter was not present during these crimes but could have testified about the Petitioner's ongoing relationship with the victim. The Petitioner agreed that, after learning that his daughter was excluded from testifying, he could have chosen to testify about his relationship with the victim but that he declined to do so. The Petitioner agreed that he never made a demand for a speedy trial.

On redirect examination, the Petitioner agreed that he sent a letter to the trial court on January 28, 2013, requesting to have his sentencing hearing "as soon as possible." The Petitioner sent another letter with the same request in February 2013. The Petitioner maintained that, when he signed the waiver of his right to appeal, he believed that it meant, "18 more months I would be home." He stated that he relied on sentencing counsel's advice when he signed the waiver.

On recross examination, the Petitioner confirmed that he was arrested while fleeing the scene. He further agreed that he was convicted of aggravated assault on the basis that he attacked the victim while enjoined by an existing order of protection. He stated, however, that he was unaware of the order of protection because he and the victim were dating at the time.

Sentencing counsel testified that she was appointed to represent the Petitioner and later learned she was appointed because trial counsel could no longer represent the Petitioner. Sentencing counsel first made copies of the court file and spoke with the prosecutor on February 8, 2013. Sentencing counsel said that, upon learning that the Petitioner was "disputing a plea to felony Schedule 6 in Madison county," she called and requested the Petitioner's criminal history from Madison County. She also requested the Petitioner's probation file from his probation officer. On Sunday, February 12, 2013, sentencing counsel went to the jail to meet with the Petitioner. She explained that she went to the jail on the weekend because she felt it was important to make contact with the Petitioner as soon as possible. She said that this first meeting was more than an hour, and "it felt like the roles were a little reversed." The Petitioner stated that he did not plead guilty to the offense in Madison County because he was in federal custody at the time. Sentencing counsel said that she thought this was a good avenue for further investigation

4

because, if she could successfully attack the Madison County plea, the Petitioner would be a Range I offender rather than a Range II offender at sentencing. The two discussed the various agencies and people that sentencing counsel needed to contact in order to attack the Madison County conviction. The two also discussed the Petitioner's recommendation for sentencing, sentencing hearing strategy, and potential witnesses.

Sentencing counsel testified that, the following day, she researched statistics on the charges as well as case law relevant to sentencing. Statistically she believed it would be difficult, even if the Petitioner was Range I, for the Petitioner to "get" a three year sentence because of the nature of the crimes. On February 14, 2013, sentencing counsel met with one of the Petitioner's probation officers and received copies of the Madison County booking photos and judgments. Sentencing counsel said that the booking photos for the person who pled guilty in Madison County were of the Petitioner. She said the Petitioner later also verified that the booking photos were of him.

Sentencing counsel testified that the Petitioner had asked her to make contact with his brother, Dontavius Jones, as a witness for the sentencing hearing, and she called and left Mr. Jones a voice message on February 21, 2013. Sentencing counsel spent much effort in confirming the Petitioner's claim that he was in federal custody in 1997 at the time of the Madison County plea, but she was unable to find any proof that the Petitioner was in the federal system at the time the Madison County plea was entered. Sentencing counsel returned to the jail on February 21, 2013, to meet with the Petitioner and advise him of the work done on his case to date.

On February 22, 2013, sentencing counsel again called Mr. Jones and provided him with a status update and advised him that the Petitioner wanted him to testify at the sentencing hearing. Mr. Jones agreed to testify on the Petitioner's behalf and sentencing counsel interviewed Mr. Jones briefly. Sentencing counsel returned to the jail to meet with the Petitioner on March 13, 2013, to update him on her progress and research. The Petitioner continued to insist that he was in federal custody even though there were no records to confirm his assertion. During this meeting, sentencing counsel also provided the Petitioner with a list of enhancement and mitigating factors and the "motion for probation and suspended sentence." Sentencing counsel said she had not yet filed the motion, so she reviewed it with the Petitioner to give him the opportunity to make suggestions. She made his recommended corrections and filed the motion the following day. She explained that she did not normally file a motion for probation but did so at the Petitioner's instruction.

Sentencing counsel testified that she continued to communicate with authorities in Madison County in investigating the Petitioner's contention that he did not enter the plea in Madison County. She met with the Petitioner briefly at the jail on March 21, 2013, to

5

once again "[b]ring him up to date." Sentencing counsel provided the Petitioner with the document she had received from Madison County related to the 1997 plea. The Petitioner continued to deny that he plead guilty. Later on this same day, sentencing counsel learned that the sentencing hearing had been moved to April 5, 2013. She contacted Mr. Jones by telephone and sent a letter to the Petitioner to notify both of them of the date change.

Sentencing counsel testified that, on April 1, 2013, she received a letter from the Petitioner requesting a bond hearing. That same day she drafted a motion to reduce bond and filed it with the clerk's office. Sentencing counsel said that a motion to reduce bond post-conviction can be made, but she had "not often" done so. Ultimately, the trial court set the Petitioner's sentencing hearing and bond reduction hearing for April 18, 2013. Sentencing counsel once again notified Mr. Jones and the Petitioner of the new court date.

Sentencing counsel testified that she did not feel it was necessary to request a transcript of the trial before the sentencing hearing. She explained, "The facts of the case had already been decided. And that would be contained in the transcripts of the trial. What we were looking at was purely legal at this point." Sentencing counsel said that she cross-examined the victim at the sentencing hearing and found the court file helpful in preparing for cross-examination. She stated that she felt competent in her abilities to adequately represent the Petitioner at the sentencing hearing based upon her review of the record and legal research. Sentencing counsel said that she successfully argued for concurrent sentencing at the hearing and upon receiving the sentencing order she found an error and had the error corrected. Sentencing counsel acknowledged that the waiver incorrectly listed the date of May 18, 2013, for the sentencing hearing rather than April 18, 2013. She described this as an "administrative error."

Sentencing counsel testified that she met with the Petitioner on April 22 and 30, 2013. On April 22, sentencing counsel informed the Petitioner of the time frame for an appeal or motion for new trial. She also discussed with him the implications of being housed in different facilities and potential post-conviction issues. Sentencing counsel denied telling the Petitioner that he would be out of jail in eighteen months. She said she generally tells her clients that it is "more than likely" that the parole board will not approve parole the first time. Sentencing counsel stated that the Petitioner appeared to understand everything they reviewed during this April 22 meeting. The Petitioner told sentencing counsel that he wanted to waive his right to a new trial motion and an appeal, so sentencing counsel prepared a waiver and returned to the jail on April 30, 2013. At this meeting, sentencing counsel reviewed with the Petitioner each of the judgments in this case, and then she read aloud to him the waiver. Sentencing counsel said that the

6

Petitioner stated "repeatedly" that he did not want a new trial or an appeal, and he signed the waiver form.

On cross-examination, sentencing counsel testified that the Public Defender's office was appointed to represent the Petitioner on January 9, 2013, and she was assigned the case on February 8, 2013. She clarified that she first met with the Petitioner on February 10, 2013, rather than February 12 as she had earlier stated.

On redirect examination, sentencing counsel read the following trial court findings from the sentencing hearing:

> The enhancement factors that the Court is going to find relevant in this case are, one, that the offense involved more than one victim. Two, the personal injuries inflicted upon or the amount of damage to the property sustained or taken from the victim was particularly great. And, finally, the Defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community.
>
> And, basically, what happened on that was he was on bail for another offense against this same lady. He was charged with committing aggravated assault, which he was convicted of in this court, and domestic assault.
>
> And the charge was on 9 - - that's September 6th, 2011. And there was an order of protection granted against him on September 19th, 2011.

Sentencing counsel agreed that the trial court's findings were different than those delineated in the sentencing findings of fact and the duplication of factors in the findings of fact was likely an error. She stated that, in her opinion, the errors in the findings of fact, however, did not change the sentence imposed at the conclusion of the sentencing hearing.

In a subsequent written order, the post-conviction court denied the Petitioner post-conviction relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

The Petitioner asserts that he received the ineffective assistance of counsel and he was denied his right to a speedy trial due to the almost seven-month delay between his conviction and sentencing. The State responds that the Petitioner has failed to show he is entitled to post-conviction relief. We agree with the State.

7

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or [ ] sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House*

*v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Right to a Speedy Trial

The Petitioner contends that the trial court denied his constitutional right to a speedy trial by waiting more than six months to conduct the sentencing hearing in this case. In its order denying relief, the trial court made the following findings about the delay:

No formal motion for a speedy trial was ever filed. The jury returned its verdict on September 28, 2012. The sentencing hearing occurred on April 18, 2013. During this interval, two major events occurred: (1) the Trial Judge retired, and the undersigned Judge was appointed by the Governor to fill the vacancy in office on October 29, 2012; and (2) the Petitioner's trial attorney, [ ], fell ill and died on January 27, 2013. The Trial Judge's retirement caused a delay, because the undersigned Judge determined that the Trial Judge was better equipped to preside over the sentencing hearing, having recently presided over the trial; an Order was formally issued to that effect on December 17, 2012. [Trial counsel's] illness and death caused a delay, because he missed some Court hearings, and the Public Defender's Office was appointed in his stead on January 9, 2013. [Sentencing counsel] learned that the case had been assigned to her on February 8, and immediately began preparing for the hearing.

The trial court concluded that the trial judge's retirement and the death of trial counsel constituted "good cause" for the delays and that the Petitioner had failed to show the delays unduly prejudiced him.

The State asserts that the Petitioner has waived any right to a speedy trial challenge for failure to raise this issue on direct appeal. We agree with the State that a post-conviction petitioner waives a speedy trial claim if the petitioner did not raise the issue on direct appeal. T.C.A. § 40-30-106(g); *See Givens v. State*, 702 S.W.2d 578, 580 (Tenn. Crim. App. 1985). In this case, the Petitioner waived his right to appeal and, therefore, has waived any claim that he was denied his right to a speedy trial. *See Black v. State*, 794 S.W.2d 752, 756 (Tenn. Crim. App. 1990) (holding a ground for relief is waived if a petitioner knowingly failed to present the issue for review before a court of competent jurisdiction in which the ground could have been presented). Accordingly, we conclude that the Petitioner has waived this issue.

### B. Ineffective Assistance of Counsel

The Petitioner asserts that he received the ineffective assistance of counsel at trial and sentencing. The Petitioner contends that trial counsel was ineffective for failing to sequester the Petitioner's daughter as a witness at trial, thereby causing her to be excluded from testifying. The Petitioner contends that sentencing counsel failed to adequately prepare for the sentencing hearing, failed to adequately advise him about the waiver of his right to seek a new trial and to appeal, and failed to object to the erroneous application of enhancement factors at sentencing.

## 1. Trial Counsel

The Petitioner asserts that trial counsel's representation was deficient because trial counsel failed to ask the Petitioner's daughter to leave the courtroom during the trial pursuant to the rule of witness exclusion, thus preventing her from testifying. In his brief, the Petitioner argues that his daughter would have testified about his ongoing romantic relationship with the victim, which would have affected the victim's credibility because the victim testified at trial that her relationship with the Petitioner had ended before the time of the assault.

The post-conviction court made the following findings in its order:

> Although the Petitioner believes that [trial counsel] did a "pretty good job" overall, he complains that [trial counsel] failed to comply with T.R.E. 615 (exclusion of witnesses), resulting in the Petitioner's [daughter] not being allowed to testify; indeed, [trial counsel] failed to instruct the Petitioner's [daughter] to step out of the courtroom when T.R.E. 615 was invoked, so she was present for all of the testimony, and the Trial Judge did not allow her to testify. However, the Petitioner acknowledged that he has no idea as to what his [daughter] would have said, had she been permitted to testify. Furthermore, the Petitioner acknowledged that his [daughter] was not present at the time of the assault. The Petitioner believes, however, that his [daughter] could have testified that he and the victim were still in a relationship at the time of the assault, and that there was ongoing bickering between him and the victim at that time.

The evidence does not preponderate against the post-conviction court's findings. The Petitioner testified that he did not know what his daughter would have said at trial had she been allowed to testify, and she did not testify at the post-conviction hearing. To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a petitioner should present that witness at the post-conviction hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.*

Accordingly, the Petitioner has failed to prove by clear and convincing evidence that the omission of his daughter's testimony prejudiced him at trial. The Petitioner is not entitled to relief.

## B. Sentencing Counsel

11

The Petitioner asserts that sentencing counsel: (1) failed to adequately prepare for the sentencing hearing; (2) failed to adequately advise him about the waiver of his right to seek a new trial and to appeal, and (3) failed to object to the erroneous application of enhancement factors at sentencing.

## 1. Preparation for Sentencing Hearing

The Petitioner argues that sentencing counsel's performance was deficient in that she failed to adequately prepare for the sentencing hearing because she did not request a transcript of the trial. The post-conviction court made the following findings in its written order:

> While the most prudent course would have been for [sentencing counsel] to obtain the trial transcript, this omission, when viewed in light of her overall strategy, was not "so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" The thrust of [sentencing counsel]'s strategy was to attack the Petitioner's Madison County conviction, and thereby persuade the Court that the Petitioner qualified as a Range I offender. [The Petitioner] approved of this strategy, and [sentencing counsel] made every possible effort to succeed in that regard. Counsel will not be deemed ineffective merely because a different strategy or procedure might have produced a more favorable result. Moreover, [sentencing counsel] explored other potential avenues of defense for the sentencing hearing, and fully apprised herself of the facts and law applicable to the Petitioner's case. Finally, it bears mentioning that [sentencing counsel] obtained a good result for the Petitioner under the circumstances, insomuch as she successfully argued for concurrent sentencing, over the State's objection.

(citations omitted).

The evidence does not preponderate against the trial court's findings. Sentencing counsel testified about her extensive investigation into the Petitioner's federal incarceration in an attempt to attack a prior conviction used to classify the Petitioner as a Range II offender. She and the Petitioner discussed this strategy, and he continued to maintain that he did not enter the Madison County guilty plea despite all evidence to the contrary. Sentencing counsel effectively researched sentencing law and successfully argued against the State's position that the Petitioner should receive consecutive sentences. The Petitioner has failed to meet his burden of proving by clear and

12

convincing evidence that sentencing counsel was deficient in this regard. Therefore, he is not entitled to relief as to this issue.

## 2. Waiver

The Petitioner argues that sentencing counsel was deficient for failing to properly advise him about the waiver of his rights to seek a new trial and to appeal, and the consequences of his waiving these rights. The Petitioner also argues that the waiver is facially void due to the errors in the date of the Petitioner's conviction and sentencing date. About this issue, the post-conviction court made the following findings:

> The Court has found [sentencing counsel] to be more credible than the Petitioner regarding the content and duration of their April 22 and April 30, 2013 meetings concerning the waiver, and specifically finds that the Petitioner made a reasoned, informed decision to sign the waiver after having over a week to weigh his options. In essence, based on information provided by [sentencing counsel] regarding the likely timetable for an appeal and the Petitioner's inability to pursue parole and an appeal simultaneously, [the Petitioner] decided that waiving his right to appeal would provide him with the earliest opportunity to get out of prison. [The Petitioner] was not coerced into signing the waiver. [Sentencing counsel] read the waiver form to [the Petitioner], word for word. [The Petitioner]'s failure to read the form himself prior to signing it does not defeat its validity. . . .
>
> As for the waiver form itself, the typographical errors do not undermine the actual substance of the waiver, or the fact that the form reflects a voluntary, knowing decision made by the Petitioner.

The evidence does not preponderate against the trial court's findings. Counsel met with the Petitioner on two occasions to discuss a waiver of the right to seek (through motion) a new trial and to file a notice of appeal. After the Petitioner expressed his desire to waive these rights, sentencing counsel drafted the document and returned a week later with the waiver. Counsel discussed each of the Defendant's convictions with him and then read the waiver, in its entirety, aloud to the Petitioner. As to the errors in the conviction and sentencing date in the waiver, the Petitioner makes no argument as to how these clerical errors in the waiver prejudiced him. The Petitioner has not shown by clear and convincing evidence that Counsel was deficient; therefore, he is not entitled to relief.

## 3. Enhancement Factors

The Petitioner asserts that sentencing counsel failed to object to "the erroneous application of certain" enhancement factors and, therefore, he was sentenced at the top of the applicable range. In its written order denying relief, the post-conviction court found that the Petitioner's attack on the application of enhancement factors was not a cognizable post-conviction claim. To the extent the Petitioner argues against the application and weight of the factors, we agree. We now consider whether sentencing counsel was deficient in her failure to object to "the erroneous application of certain" enhancement factors.

At the sentencing hearing, the trial court found that the offense involved more than one victim, the personal injury inflicted upon the victim was particularly great, and before trial or sentencing, the Petitioner failed to comply with the conditions of a sentence involving release into the community. In the "Sentencing Findings of Fact," issued after the sentencing hearing, the enhancement factor for failing to comply with the conditions of release into the community is listed twice and omits the factor the trial court announced at the hearing that the personal injuries were particularly great. As to the "Sentencing Findings of Fact," we conclude that this was an administrative error and the trial court applied the three enhancement factors as announced at the time the Petitioner was sentenced.

As to the Petitioner's contention that sentencing counsel failed to object to the trial court's application of enhancement factor (8), that the Petitioner had failed to comply with the conditions of release into the community, we conclude that the Petitioner has failed to show how he was prejudiced by her failure to object[1]. Our review of the record before us does not show that the Petitioner failed to comply with a sentence involving release into the community, factor (8), rather the evidence showed that he committed an offense while released on bail, factor (13). *See* T.C.A. § 40-35-114 (8) and (13)(A) (2014). The trial court correctly applied two other factors, factor (3), the offense involved more than one victim, and factor (6) the personal injury or damage to the victim was particularly great. *See* T.C.A. § 40-35-114 (3) and (6). We note that "misapplication of an enhancement or mitigating factor does not invalidate the sentence." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, the Petitioner has failed to show by clear and convincing evidence that he is entitled to post-conviction relief.

### III. Conclusion

---

[1] We note that, although she did not object after the trial court announced its ruling, during argument at the conclusion of the proof at the sentencing hearing, sentencing counsel acknowledged that the Petitioner was on bail at the time of the offense but clarified that the Petitioner was not at that time serving a sentence involving release into the community.

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied the Petitioner's petition for post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE